# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00672-CR

**Leroy James Tibbets, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
### NO. CR-99-0547, HONORABLE GARY L. STEEL, JUDGE PRESIDING

Appellant Leroy James Tibbets appeals his two convictions for aggravated sexual assault of a child under the age of fourteen years. *See* Tex. Pen. Code Ann. ' 22.021(a)(1)(B)(i), (ii) (West Supp. 2002).[1] The jury found appellant guilty on both counts of the indictment and assessed his punishment at five years=imprisonment and a fine of $4,000 on each count. The jury, however, recommended probation. The imposition of the sentences was suspended. Appellant was placed on probation subject to certain conditions.

### Points of Error

Appellant advances four points of error. First, appellant contends that the trial court erred in having the court reporter reproduce for the jurors certain portions of the trial testimony

---

[1] The current code is cited for convenience. The instant prosecution was under the Act of May 29, 1995, 74th Leg., R.S., ch. 318, ' 7, 1995 Tex. Gen. Laws 2734, 2737 (Tex. Pen. Code Ann. ' 22.021(a)(1)(B)(i), (ii), since amended) (unchanged as to applicable portion of statute).

without having determined that the jurors had an actual dispute. *See* Tex. Code Crim. Proc. Ann. art. 36.28 (West 1981). Second, appellant urges that the trial court erred in commenting on the weight of the evidence during jury argument at the guilt-innocence stage of the trial. Third, appellant asserts that he was deprived of his constitutional right to the effective assistance of counsel. Fourth, appellant claims that the evidence is insufficient to establish that the complainant was not appellant's spouse at the time of the offenses as alleged in each count of the indictment.

**Background**

A brief recitation of the facts will place the points of error in proper perspective. The complainant, A.M., testified at the October 2001 trial that she was eighteen years of age; that when she was thirteen years of age, she met a man Aover the telephone@ who called himself AJohn,@ but whom she later learned was Wesley Seguin; that they had Aphone sex@ and Seguin picked her up that same night and they had sex in the back of Seguin=s truck. The complainant testified that thereafter John picked her up on several occasions, and she had sex with him and several of his friends. On March 7, 1997, the complainant went with John to a house at 209 Mill Street in San Marcos. She was introduced to John=s roommate, ALeroy.@ She went into a bedroom with Leroy, and they had both oral sex and vaginal intercourse. She testified on direct examination that Leroy had only one testicle because she not only observed that fact but had felt Leroy=s testicle. The complainant was not able to identify appellant in the courtroom. She testified that there was only a red light on in the bedroom. She did not observe any tattoos or ornaments on Leroy=s body. The complainant=s estimates about Leroy=s body height and weight did not exactly match appellant=s height and weight. Wesley Seguin testified that one night in March 1997 he brought the complainant to the house he shared with appellant; that after a short interval appellant and the complainant disappeared into appellant=s bedroom. He assumed that they had sex but had no personal knowledge thereof. Seguin recalled that he had told appellant earlier the complainant was Afairly loose and would have sex with anybody.@ Seguin admitted that he was too drunk to have sex with the complainant on the night in question. Seguin denied that he knew that the complainant was thirteen years old at the time. Seguin also denied knowledge that appellant only had one testicle. At the time of his testimony, Seguin had already been convicted upon his plea of guilty of aggravated sexual assault of a child.

3

The complainant did not report the matter to the police or any adult until two years later. In 1999, she sought counseling at Roxanne=s House, a local child advocacy center. A counselor reported the allegations to the police.

Scott Johnson, a detective with San Marcos Police Department, testified that he began an investigation of the instant offenses, and talked with the complainant and Seguin. He narrowed the suspects to four, and talked with appellant at a book store in Austin. Johnson reported that appellant became angry when he learned Johnson knew he had only one testicle. Appellant accused Johnson of examining his medical records. Johnson related that appellant terminated the interview shortly after it was started. The import of Johnson=s testimony was that appellant was the only suspect with one testicle.

Appellant testified and denied the offenses. He stated that he did not know the complainant and had never seen her until the time of the earlier trial settings. He claimed that he spent every night in March 1997 at his girlfriend=s house or apartment in San Marcos. Appellant acknowledged that the lease on the house on Mill Street was in his name, that Wesley Seguin was his roommate, but that they did not get along. Appellant claimed Seguin was into alcohol and drugs. Appellant acknowledged that he had only one testicle due to a sports injury.

To support his alibi, Nikki Spinosa came from California to testify that she was appellant=s girlfriend, and that he had spent the night in question with her in San Marcos to help her with a university examination the next day. Her memory had been jogged by examining her organizer calendar from the spring semester of 1997. She recalled that appellant had brought her a CD-rom that night to assist in her study for the examination.

**4**

Spinosa reported that she had been intimate with appellant on a number of occasions and did not know that he had only one testicle until he told her sometime later. Spinosa also related that appellant always had rings in his nipples with silver hoops and a Ahappy face@ tattooed along Ahis bikini line@ on his stomach. She also recalled a Askull and crossbones@ tattoo on the back of his head.

Laura Boudloche, an ex-girlfriend of appellant=s, also testified that she had been intimate with appellant without observing or knowing appellant had only one testicle until he told her sometime later. Branden Allmon, a classmate of appellant=s, testified that he, appellant, and Seguin were in the Drama Department of Southwest Texas State University from 1991 to about 1996; that he knew that appellant and Seguin did not get along, and that it was fairly common knowledge in their group that appellant had only one testicle.

### The Trial Court=s Remark

We begin with appellant=s second point of error as it leads into the first point of error. Appellant claims that the trial court commented on the weight of the evidence during jury argument at the guilt-innocence stage of the trial. The prosecutor argued that the complainant could identify appellant not only because she saw he had one testicle but she Afelt it.@ The record then reflects:

| | |
|---|---|
| Mr. Rugeley [defense counsel]: | Your honor, I=m going to object. My memory is not that she said, AI felt it.@ As I recall on cross-examination, I asked her AWhatChow did she know?@ and she said, AIt sure looked different from other guys.@ |

**5**

| Ms. Stanislaus [prosecutor]: | Your honor, they can remember the facts as they want to. |
|---|---|
| Mr. Rugeley: | Well, I think . . . |
| The Court: | Well, it was stated and it was stated in direct questioning by Ms. Stanislaus, so your objection is overruled. |

A trial court should never Amake any remark calculated to convey to the jury [its] opinion of the case.@ Tex. Code Crim. Proc. Ann. art. 38.05 (West 1979); *Devis v. State*, 18 S.W.3d 777, 782 (Tex. App.CSan Antonio 2000, no pet.). If it can be said that the trial court=s remark ran afoul of article 38.05 in any way, there was no objection to the comment or remark so as to preserve error. *See* Tex. R. App. P. 33.1; *Sharpe v. State*, 648 S.W.2d 705, 706 (Tex. Crim. App. 1983); *Hoang v. State*, 997 S.W.2d 678, 680 (Tex. App.CTexarkana 1999, no pet.). We find no fundamental error. Appellant=s second point of error is overruled.

### Reproduction of Testimony

In his first point of error, appellant asserts that the trial court had the court reporter reproduce certain testimony without first determining that the jurors had a dispute about that testimony in violation of article 36.28 of the Texas Code of Criminal Procedure.[2] After the jury

---

[2] Article 36.28 provides:

In the trial of a criminal case in a court of record, if the jury disagree as to the statement of any witness they may, upon applying the court, have read to them from the court reporter=s notes that part of such witness testimony or the particular point in dispute, and other; but if there be no such reporter, or if his notes cannot be read to the jury, the court may cause such witness to be again brought upon the stand and the judge shall direct him to repeat his testimony as to the point in

argument described earlier, the jury, during its deliberations, sent a note to the trial court with two questions or requests:

> May we get transcript re: discovery of one testicle
>
> a)   where in testimony (Direct or Cross X) did [complainant] testify she Afelt@ the testicle.
>
> b)   where in testimony (Direct or Cross X) did [complainant] testify Ait looked like no other testicle.@
>
> c)   Question & Answer.

> The second request was:

AJurors would like to view defendant=s testicle.@

The trial court answered the latter request, ANo, you have received all the evidence you will receive in this case.@ As to the first request, the trial court and appellant=s counsel were in disagreement over its proper interpretation. When, however, the testimony was read back to the jury, there was no objection that the trial court had failed to determine that the jury was in dispute about the testimony in question. In the absence of an objection, no error was preserved. Tex. R. App. P. 33.1; *Hollins v. State*, 805 S.W.2d 475, 476 (Tex. Crim. App. 1991); *Casiano v. State*, 495 S.W.2d 232, 233-34 (Tex. Crim.

---

dispute, and no other, as nearly as he can in the language used on the trial.

Tex. Code Crim. Proc. Ann. art. 36.28 (West 1981).

App. 1973); *Martin v. State*, 459 S.W.2d 845, 846-47 (Tex. Crim. App. 1970); *Woods v. State*, 10 S.W.2d 90, 90 (Tex. Crim. App. 1928). The first point of error is overruled.

## Ineffective Assistance of Counsel

In his third point of error, appellant contends that he received ineffective assistance of counsel at the guilt-innocence stage of the trial. The Sixth Amendment to the United States Constitution guarantees the right to the reasonable effective assistance of counsel in state criminal proceedings. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970); *see also Wilkerson v. State*, 726 S.W.2d 542, 548 (Tex. Crim. App. 1986). The standard for appellate review of the effective assistance of counsel, either retained or appointed, is the two-pronged test of *Strickland v. Washington*, 466 U.S. 668 (1984), adopted in Texas by *Hernandez v. State*, 726 S.W.2d 53, 53 (Tex. Crim. App. 1986). Under the *Strickland* standard, a convicted defendant must (1) show that his trial counsel=s performance was deficient in that counsel made such serious errors he was not functioning effectively as counsel, and (2) show that the deficient performance prejudiced the defense to such a degree that the defendant was deprived of a fair trial. *Strickland*, 466 U.S. at 686-89; *Parmer v. State*, 38 S.W.3d 661, 665 (Tex. App.CAustin 2000, pet. ref=d); *Banks v. State*, 819 S.W.2d 676, 681 (Tex. App.CSan Antonio 1991, pet. ref=d). Unless a defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the results unreliable. *Strickland*, 466 U.S. at 687; *Oestrick v. State*, 939 S.W.2d 232, 237 (Tex. App.CAustin 1997, pet. ref=d). Under *Strickland*, a defendant has the burden to prove a claim of ineffective assistance of counsel by a preponderance of evidence. *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996); *Parmer*, 38 S.W.3d at 665.

The review of a claim of ineffective assistance of counsel is highly deferential. *Strickland*, 466 U.S. at 687; *Busby v. State*, 990 S.W.2d 263, 268 (Tex. Crim. App. 1999). Every effort must be made to eliminate the distorting effect of hindsight. *Strickland*, 466 U.S. at 689; *Kunkle v. State*, 852 S.W.2d 499, 502 (Tex. Crim. App. 1993); *Scott v. State*, 57 S.W.3d 476, 483 (Tex. App.CWaco 2001, pet. ref=d). A reviewing court must indulge a strong presumption that a trial counsel=s conduct falls within a wide range of reasonable representation. *McFarland*, 928 S.W.2d at 500. An ineffectiveness claim cannot be demonstrated by isolating one portion of counsel=s representation. *Parmer*, 38 S.W.2d at 666. Courts assay the totality of counsel=s representation rather than isolated acts or omissions. *Wilkerson*, 726 S.W.2d at 548; *Duvall v. State*, 59 S.W.3d 773, 779 (Tex. App.CAustin 2001, pet. ref=d). The *Strickland* standard has never been interpreted to mean that the accused is entitled to errorless or perfect counsel. *Bridge v. State*, 726 S.W.2d 558, 571 (Tex. Crim. App. 1986). Moreover, the fact that another attorney might have pursued a different course of action at trial will not support a finding of ineffectiveness. *Nethary v. State*, 29 S.W.3d 178, 188 (Tex. App.CDallas 2000, pet. ref=d); *Banks*, 819 S.W.2d at 681.

Further, an appellant must overcome the strong presumption that, under the circumstances, counsel=s challenged actions might be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). Generally, courts will not second-guess or speculate about counsel=s trial strategy. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); *Duvall*, 59 S.W.3d at 779. Any error in trial strategy will be deemed inadequate representation only if counsel=s actions are without any plausible basis. *Ex parte Ewing*, 570 S.W.2d 941, 945 (Tex. Crim. App. 1978); *Parmer*, 38 S.W.3d at 666. In the absence of evidence of counsel=s reasons for the

**9**

challenged conduct, an appellate court Acommonly will assume a strategic motivation if any can be imagined.@ *Garcia*, 57 S.W.3d at 440 (quoting 3 W. LaFave et al., *Criminal Procedure* ' 11.10(c) (2d ed. 1999)). Any claim of ineffective assistance must be firmly founded in the record if it is to be sustained. *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999); *Smith v. State*, 676 S.W.2d 379, 385 (Tex. Crim. App. 1984); *Scott*, 57 S.W.3d at 483.

In the instant case, appellant lists the reasons why his trial counsel afforded him ineffective assistance of counsel. He notes the two failures to object which were the basis of the disposition of the first and second points of error. He calls attention to another failure to object to a second reproduction of testimony without the trial court eliciting from the jury that it was actually in dispute over the matter. Appellant acknowledges that this matter was a closer question than urged in the first point of error. Appellant also contends that his trial counsel was ineffective for failing to object to evidence bolstering the complainant=s testimony, for failing to object to hearsay testimony about the Aother roommate,@ Matt Brown, and for failure to produce and introduce Nikki Spinosa=s organizer calendar entry with which she refreshed her memory that appellant spent the night with her on the date in question.

Appellant claims generally that no sound trial strategy was involved in counsel=s omissions. The State asserts generally that trial counsel=s omissions resulted from the lack of a proper basis for an objection, or from sound trial strategy, and that any error was harmless error.

Our difficulty is that we have an inadequate record from which to determine trial counsel=s motivations or reasons for the claimed omissions which supposedly rendered him ineffective. The record is silent in this regard, as was the appellate record in *Thompson*, 9 S.W.3d at 814. Generally, the record on

**10**

direct appeal will not be sufficient to show that trial counsel=s representation was deficient and not based on

sound trial strategy. *See Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). While sufficient

facts may be developed at a hearing on a motion for new trial and included in the record on direct appeal,

there was no motion or hearing here. Thus, when the record is silent as it is here on the motivation

underlying trial court=s tactical decisions, an appellant usually cannot overcome the strong presumption that

counsel=s conduct was reasonable. *Mallet v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).

> We are once again asked whether an appellate court may reverse a conviction on
> ineffective assistance of counsel grounds when counsel=s acts or omissions may have been
> based upon tactical decisions, but the record contains no specific explanation for counsel=s
> decisions. Once again, we answer that question Ano.@

*Bone v. State*, 77 S.W.3d 828, 830 (Tex. Crim. App., 2002); *see also Johnson v. State*, 68 S.W.3d

644, 655 (Tex. Crim. App. 2002).

In light of the instant record, appellant has not sustained his burden and satisfied the two-

pronged test of *Strickland*. *See Duvall*, 59 S.W.3d at 779, 780. The third point of error is overruled.[3]

### Proof of an Essential Element

In the fourth point of error, appellant challenges the sufficiency of the evidence to show that

the complainant was not appellant=s spouse at the time of the offense as alleged. Appellant claims that the

---

[3] AIn most ineffective assistance claims, a writ of habeas corpus is essential to gathering the
facts necessary to adequately evaluate such claims.@ *Ex parte Torres*, 943 S.W.2d 469, 475 (Tex. Crim.
App. 1997). The general doctrine that forbids raising a claim on habeas corpus after it was rejected
on appeal does not apply in this situation. *Mitchell v. State*, 68 S.W.3d 640, 642 n.9 (Tex. Crim. App.
2002).

State did not prove this element of the offenses beyond a reasonable doubt as required by statute. At the conclusion of the guilt-innocence stage of the trial, appellant moved for an instructed verdict on each count. The State urged that the circumstantial evidence was sufficient to establish the element. The trial court overruled the motion.

## Standard of Review

The standard for reviewing the legal sufficiency of evidence is whether, viewing the evidence in the light most favorable to the jury=s verdict, any rational trier of fact could have found beyond a reasonable doubt all the essential elements of the offense charged. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Skillern v. State*, 890 S.W.2d 849, 879 (Tex. App.CAustin 1994, pet. ref=d). The standard of review is the same in both direct and circumstantial evidence cases. *King v. State*, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995); *Green v. State*, 840 S.W.2d 394, 401 (Tex. Crim. App. 1992). The State may prove its case by circumstantial evidence if it proves all of the elements of the charged offense beyond a reasonable doubt. *Easley v. State*, 986 S.W.2d 264, 271 (Tex. App.CSan Antonio 1998, no pet.) (citing *Jackson*, 443 U.S. at 319). The sufficiency of the evidence is determined from the cumulative effect of all the evidence; each fact in isolation need not establish the guilt of the accused. *Alexander v. State*, 740 S.W.2d 749, 758 (Tex. Crim. App. 1987).

It is difficult to understand under the circumstances why the prosecutor did not ask to reopen the State=s case and recall a witness or witnesses and quickly establish by direct evidence the necessary element. Such action would have avoided an appellate issue, briefing, and oral argument.

As noted, however, circumstantial evidence may be used to prove an essential element of the offense charged. *See Wilson v. State*, 654 S.W.2d 465, 467 (Tex. Crim. App. 1983). Appellant concedes that circumstantial evidence may be used to prove that a complainant was not the spouse of the defendant in an aggravated sexual assault of a child case. *See Meyers v. State*, 737 S.W.2d 6, 8 (Tex. App.CCorpus Christi 1989, no pet.). Appellant contends that in *Meyers* there was a lack of evidence of whether the victim was the wife of the defendant, but the evidence *did* show that the defendant lived with the victim=s mother, had asked her to marry him, and was essentially a stepfather to the victim. This relationship was shown in a way that the jury could rationally infer that the child and the defendant were not married. *See also Jones v. State*, 817 S.W.2d 854, 856 (Tex. App.CHouston [1st Dist.] 1991, no pet.) (circumstantial evidence sufficient where child was seven years old and defendant was biological father); *Ferguson v. State*, 579 S.W.2d 2, 6-7 (Tex. Crim. App. 1979) (victim was defendant=s stepdaughter). Appellant contends that there was no relationship here as in *Meyers*, *Jones*, and *Ferguson* to support a rational inference that the parties were not married.

In the instant case, the proof showed that at the time of the offense the complainant was thirteen years old living with her parents and siblings. Appellant was twenty-six years of age and leased a house where he lived with his roommates, when he was not spending time with his girlfriend. The complainant testified she was introduced to appellant on March 7, 1997, and was with him for only an hour or so while they had sex at the house on Mill Street. She did not know appellant=s last name. Appellant denied the offenses, denied knowing the complainant, and saw her for the first time at the courthouse years after March 7, 1997, when the case was previously set for trial. While there was no marital or familial

**13**

relationship as shown in *Ferguson*, *Meyers*, and *Jones*, the instant facts provide strong circumstantial evidence that the complainant was not appellant=s spouse.

Fearful that the age of the complainant alone would be the influential factor in the question raised as in *Jones* (7 years old), and *Zewoldermariam v. State*, 730 S.W.2d 354, 354-55 (Tex. App.CDallas 1987, no pet.) (11 years old), appellant calls attention to the Act of May 14, 1975, 64th Leg., R.S., ch. 254, ' 5, 1975 Tex. Gen. Laws 619, 620 (Tex. Fam. Code Ann. ' 1.53, since repealed). This statute, in effect on March 7, 1997, would have permitted an applicant under the age of fourteen years to apply for a court-ordered issuance of a marriage license if the best interest of the minor-applicant would be served. *See* Tex. Fam. Code Ann. ' 2.103 (West 1998) (current statute). There is no inference in the evidence of any such court order. In fact, there is no inference of any legal marriage between appellant and the complainantCceremonial, common law, or (informal under the Family Code). *See* Tex. Fam. Code Ann. '' 2.402, 2.404 (West 1998).

We conclude that a rational trier of fact could have found beyond a reasonable doubt all the essential elements of the offense charged, including the element that the complainant was not the spouse of appellant. The fourth point of error is overruled.

The judgment is affirmed.

_____

John F. Onion, Jr., Justice

**14**

Before Justices B. A. Smith, Yeakel and Onion[*]

Affirmed

Filed:   October 24, 2002

Do Not Publish

[*]    Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov=t Code Ann. ' 74.003(b) (West 1998).

**15**